Our next case will be Aikens v. Ingram. Mr. Webb. Good to see you again, Mr. Webb. Nice to see you as well. Nice to be here for my perennial trip on the Aikens case. May it please the court. Of course, I think this panel knows my name is Woody Webb of the Wake County North Carolina Bar. And I'm here today on an appeal from Judge Boyle's granting of the defendant's motion for summary judgment. I'm not going to insult this court by reiterating what the standard is for granting of summary judgment and how the non-movement is entitled to all inferences in his or its favor. I will say that the defendant seemed intent to try to put this case into a military infrastructure when really what it's all about is, your honor as well know, I know Judge King knows, this is a civil rights case. This is a case where non-commissioned officers in a war zone intercepted, monitored, read, and forwarded emails without any authority or any legal basis. And they sent them back to people that were not even in the chain of command of Colonel Aiken. So we take the position that the case at this point is about evidentiary standard. And do you have any direct evidence that Ingram or Von Jess had anything to do with this, any direct evidence? Well, as I heard your honor say in the, well, I need to answer your question. I think we do have direct evidence. I think we've got the evidence that the testimony of General Griffin, we've got the memorandums that. General Griffin saw what and knew something about this person. Yes, he said that in his testimony, his deposition testimony. And he said that he thought that Von Jess had a dislike. That'd be circumstantial evidence. That's not direct evidence. No, I agree. But I asked you if you had any direct evidence. I think you eschewed correct evidence. In this whole case, you have no direct evidence. Circumstantial evidence can win the day for you. But I'm asking, do you have any direct evidence? I couldn't find any direct evidence. I don't have any, certainly not with respect to General Ingram. Do you have any as to Mr. Von Jess? Well, Direct evidence. No, I don't. I have no direct evidence that he actually monitored, intercepted, read, and took action on the man. Do you have any direct evidence that he instructed anybody else to do so? Direct evidence. No. OK, I do not. So let's turn to circumstantial evidence. Right. Now, I'd like you to tell me what your circumstantial evidence is. Because you can defeat summary judgment with circumstantial evidence. I heard your honor. And what's your circumstantial evidence that Mr. Ingram or Mr. Von Jess were involved in the instruction to, or the decision to, intercept those emails or whatever they were? The deposition testimony of General Griffin and others that, this is from Von Jess, that he had his IT guys in place to get all the email. He received over 130. And what specifically did Griffin say? I'm not trying to give you such hard, but I just would like to know specifics. I don't really recall. We recited at great length what we think is a mountain of circumstantial evidence. But I don't recall exactly what he said about that. He did say that Von Jess had admitted he had his IT people in place to get all the emails. And it's a matter of fact that these two non-commissioned officers sent to Von Jess over 130 emails. But that didn't mean that there's not any evidence that he instructed them to collect emails and to send them to him. No. The evidence is that he said they were unsolicited. He was surprised to receive them. And the evidence. Evidence contrary to that is what? Well, McCarthy testified he said, I don't want to make it too disjointed for you. But I'm just asking. I've looked at the record pretty thoroughly. But I want to give you a chance to see if there's some evidence other than what I could find that would create a reasonable inference that Von Jess and Ingram were involved in the decision to intercept these documents. Well, there's no question Von Jess. I mean, Colonel Akins, as you recall, wrote a bad officer evaluation report on Von Jess. General Ingram invalidated that. The Department of the Army Inspector General came in and said, that's undue command influence and threw it out. Thereafter, Von Jess began a campaign against Colonel Akins suggesting he was trying to overthrow the adjutant general, that his actions were unethical, unprofessional, and closely paralleled treason and mutiny, something along those lines. It then turns out that these non-commissioned officers overseas with Colonel Akins' unit, they are without authority. And of course, I don't even think Von Jess was in the military at this time. And without authority, they monitored, read, and forwarded over 130 emails to Von Jess, who we said they were unsolicited. There's record evidence on why they did that. They said, well, they testified. McCarthy testified in deposition. I asked him, why did you do that? He said, because there's somebody we could trust. Right, there's nothing illegal or conspiratorial about that. Well, except for the fact that Von Jess was not even in the military at this time. There was no basis, no legal basis for doing that. When did Von Jess give him a job? As soon as they got back from being overseas. Both McCarthy and- Had he ever worked for him before? No. How good was the job? Pardon me? How good was the job? Was it a good job? Well, I think so, yeah. They immediately went to work, and they're still, as far as I know, at the time of the deposition, they were employed by Von Jess. But how do you get around, my biggest problem here is how do you get around the Ferries doctrine? Well, Ferries, the way I read Ferries is it applies to the Federal Tort Claims Act. I don't think it has anything to do with this case. Well, that's what's going on. And Williams and Guerra, decided by the force by this court, they don't even mention Ferries. They rely on the Mendez doctrine. So this has nothing to do with the Tort Claims Act against the federal military. This is, as I said at the outset- You passed it as a 1983 case. It's a civil rights case. It's a civil rights case. And to answer your question a little bit more in depth, Von Jess- But with all this incident to service, military service, incident to military service. Well, that could be argued, except for the fact that McCarthy and Jones, the non-commissioned officers, were in a federalized unit. Mendez is for equitable relief, and you want monetary relief. No, we want- Exactly. That's right, and that's Ferries. And you can't- Aren't you also asking- And that's a bar to monetary relief. I'm sorry. No, go ahead. You go ahead. Aren't you also asking for declaratory judgment? I think we were at one point, but we've abandoned any claim for equitable relief. We're just asking for damages under 1983 now. Thank you. And as I was- You disclaimed that in your reply brief. Right. Right. And as I was going to point out- It's just a monetary relief issue. Monetary relief- That we deal with today. For a violation of deprivation of constitutional rights under the Fourth Amendment. And it might be different if this was all in a military infrastructure, but it was not, because Von Jess, first of all, he was not in the military when he received these emails. Yeah, but all the emails and everything were from the military. They were from the Army. And everything was motivated. Everything was incident to the military service. It's a question of whether it first seems to me, whether Ferries applies. If it does apply, it's a bar. I agree. Monetary relief. If it doesn't apply, then we've got to figure out whether you've got enough circumstantial evidence to get past summary judgment. And we take the position that Ferries does not apply for the reasons that I stated earlier. But Mendez, then, do you think it's out the window that you abandon this equitable relief claim? Yes, I do. OK. I also, therefore- It's a question of the breadth of Ferries first, then. Right. And then the evidentiary issue. Yeah, of course, the district court- If you get past Ferries. Did you say you get past Ferries, and then it's the evidentiary issues? Right. And Judge Boyle, of course, he gave short shrift to Ferries, but he relied on Mendez. And his basic theory was, or he posited a theory, that our Fourth Amendment claim was very weak. That Colonel Aikens had no expectation of privacy. As we pointed out in our brief, we take strong objection to that. The Army regulation in place at the time said that even the Army computers that were in Kuwait in a war zone, that the users were entitled to maximum privacy and protection. And that the computers- They were encouraged to use them for personal purposes, weren't they? Correct. Exactly. So to suggest there was no expectation of privacy is fallacious. I do want to talk about qualified immunity just for a second, because it seems the defendants are arguing, or they are arguing, that even if there was a violation, none of these people knew about it. None of these people had no clue that this could possibly be a violation of Fourth Amendment. My god, by the time this came to pass, the Electronic Communications Privacy Act was already in law. The Computer Fraud Abuse Act was already in law. Even the Tele-Owned Consumer Protect Act was already in law. Plus, there's a slew of cases that stand for the proposition that there was an expectation of privacy. And it was known. The Truelock case, the Monroe case, the Maxwell case. I think it just defies belief that they could argue that. So I think what this court has to tussle with is, was there an expectation of privacy on the part of Colonel Aikens? And was there a violation of that in the context of a civil rights case, not military infrastructure? I know I have more time, but I'll be glad to answer any questions you might have. I'll give you the chance one more time to tell me what is your best, and maybe all of your circumstantial evidence. I thought you were going to point to what Hickman said, what Griffin said, and what Barnes said. Whether or not that's strong enough, I don't know. But I thought you would certainly point to that. Do you want to point to that? Because what I'm going to do is, I'm going to do the same thing I did in the last case. I'm going to ask the other side to respond to your assertions of evidence. And then I'm giving you the chance to say what you think your strongest evidence is, circumstantial evidence, to create that inference. The negative OER officer evaluation report that led to a memorandum being written by Von Jess, not once but twice, even to the chief of staff of the governor of North Carolina accusing my client of treason. And then relying upon two guys that he knew at Camp Duwa in Kuwait to access, monitor, read, intercept, and forward emails to his home computer when he wasn't even in the military. So certainly, Colonel Aikens wasn't under his command. Over 130 of them. He was in the reserves, wasn't he, or National Guard or something. I think he was out. He wasn't on active duty, is what you mean. He was not on active duty.  to Ingram, Jim Ingram. I think all the fact that he admitted he was a mentor to Jones and McCarthy, who then said, in response to my question, why'd you do it? Because he was the one person we could trust. Why'd you do it? What is it? Ordered them to him? Yes. I'm asking about the evidence that they were instructed to intercept. That's my question. I don't have a smoking gun that Von Jess told them to do this. Didn't a number of people testify that McCarthy and whatever the other person's name was, of that rank, they could not fathom someone of that rank monitoring emails without direction from a higher-up to do so? Yes, there's evidence of that in the record. That's what the general said, didn't it? Yes. I can't recall the generals that testified, but they all were pretty universal. But your red light came on there. Oh, sorry. You've got some time reserved. Let's see what Mr. Robbins has got to say about this. Thank you. Excuse me, Mr. Williams. May it please the court. My name is Gerald Robbins. I'm with the code counsel, Charles Whitehead. We represent General Ingram and Colonel Von Jess in this matter. As the court is aware, we're here on the plaintiff's appeal of the trial court's grant of summary judgment. Judge King, as to your question directly, I, too, believe that Ferries is dispositive, or I would argue that Ferries has to be addressed first. Why does it have to be addressed first? If there's no evidence whatsoever of any inappropriate conduct, why does Ferries have to be addressed first? Ferries is a justiciability argument, Your Honor. And so I would argue that the justiciability needs to be determined first before the court then would consider any evidence. Do we have to do that?  You can. Yes, certainly, Your Honor, you can assume it. OK. But as to Ferries, it's absolutely clear that counsel for plaintiff was incorrect, Your Honor, in terms of limiting Ferries to simply the Federal Tort Claims Act. As the court is well aware, it applies under Chappell to Bivens-type relief. And under Stanley, reiterated again that both Bivens-type relief as well as non-relief under Mendez would apply. Now, as the court pointed out in speaking with Mr. Webb, they've now waived any of their equitable arguments, which leaves solely the request for damages here. We would contend that that request for damages brings us squarely within Ferries. And the test there is that it's only a damages issue. No equitable relief. So you agree with Mr. Webb that Mendez is out of the picture? If he's waived, which he's done today, he's waived it. He says this morning he waived it. I think that's pretty good. I mean, pretty binding on you if you stand up here in this court and tell us you waived it. And he said he disclaimed it and he's repoberating. That's correct, Your Honor. So we would agree with the court that Mendez is no longer applicable and Ferries is the only case that applies in terms of the damages claim. Mendez, as this court is aware, or I'm sorry, Ferries, as this court is aware, uses an incident to service test. Incident to service. Arising out of or incident to service. With that quote, incident to service. That's correct. That's the standard, right, for Ferries? That is correct. And it's beyond doubt here that the damages from which plaintiff claims arose from the alleged hacking and intercepting of his emails while he was on active duty, Title 10 status, in Kuwait, acting as the commanding officer of the 139th Reserve Operations Center, or Rear Operations Center, I should say. There can be no doubt this arose from his military service. And it has nothing to do with where and when General Ingram and Colonel Von Jess were at the time that they received these copies of these emails. It's where was the- You're saying it didn't make a difference whether they were in the military or not? It doesn't matter, but in this case- What if they were pure civilians? There is existing case law, not in this circuit, but there is existing case law that allowed for civilians. Because the reason you can go after civilians, the reason you can go after National Guardsmen as well as active duty, is because the incident to service test arises at the time of the alleged events and how did they occur. Not where did they occur, but how did they occur. And here, what we're talking about is, it happened in Kuwait, in a war zone, while Colonel Aikens was on Title 10 status. That is prototypical ferry's doctrine. So the incident to service relates to Aikens? That's correct, Your Honor. Not to the other fellows? That's correct, Your Honor. In your view? In this case, however, I would point out that as Judge King, you pointed out in the conversation you had with Mr. Webb, Colonel, or I'm sorry, General Ingram was in fact the tag at the time this happened, or the adjutant general for the North Carolina National Guard. At the time, Colonel Von Jess was not with the North Carolina National Guard. He was still a member of the North Carolina National Guard, but he was serving in Norfolk, Virginia with a joint task force. But he was still in the National Guard. So all of the parties in this matter were still National Guard. So they were on active duty? Neither, Colonel Von Jess was not on active duty. He was not in Title 10 status. He was still Title 32. Title 10 means active duty? That federalized, if you will, Your Honor. Federalized? Federalized, if you will. But Colonel Von Jess was in his normal duties as a National Guard. Was he part of the National Guard at that point? Yes, Your Honor, he was. Doing all of this, whether he was federalized at some points or not, both these defendants were in the National Guard during all this period. That is correct, Your Honor. But there are different categories of being a National Guard. That's true. Bacon was on active duty in Kuwait. In Kuwait, in a war zone. In a war zone. And that's the thing about being in the National Guard. I used to be in the National Guard. Matter of fact, but I was a private. I didn't, they didn't explain much to me. He was the general in charge. I just did what they told me. So then you're aware of the dual-hatted nature of being in the National Guard? I don't know if I'm aware of much of anything, wait. Yes, sir. Now, I want to point out, in terms of the circumstantial evidence that you were discussing with Mr. Judge Shedd, he complains about the fact that there was a negative OER, or officer evaluation report. And there was, at one point in time, a negative evaluation. That might be evidence of motivation, but I don't see how that's any reasonable inference of evidence of taking action. And we would agree wholeheartedly with you, Your Honor. And in fact, I would point out further that when the Army did its investigation, as to all of the alleged allegations that transpired here, they said, number one, that General Ingram did not have any undue influence in that OER. Does any of that matter to us, what they concluded as to either way? He offered up their conclusions, you offered, does it matter to us? In any way, does it bind us, or even be evidence of anything? Only as it relates to the potential of meeting the burden of the moving party, and that is to demonstrate that there is no substantial. Well, how does that do it? One person's opinion that you didn't do wrong, that didn't go to the burden. I don't think it goes to the burden, Your Honor, but what I do think it does is it demonstrates the purpose of ferries, and what this case is truly about in ferries. And that is that we don't want to interfere with military discipline, we don't want to interfere with- Well, but you just said you want to go to my question of circumstantial evidence, which has nothing to do with the ferries doctrine. Now, maybe you want to go back to the ferries doctrine. Well, I think- Do you understand? Yes, Your Honor, I do. I just, I'm going to leave ferries aside for a second, for the purposes of my question. And I asked Mr. Webb the question, what is the circumstantial evidence? He really didn't point to anything. I thought, let me bring out some circumstantial evidence. Thank you. Possibilities, and you respond to them. Hickman says, I can't see how lower-ranking enlisted folks freelancing without having the, sorry, I can't see lower-ranking enlisted folks freelancing without having the supervision of a captain or a major in that level of command. What do you say to that? I say, that may well be a true statement, but that's not relevant to these individuals. It has nothing to do with whether or not Colonel Von Jess or General Ingram said anything or did anything to ensure that the two soldiers in Kuwait, McCarthy and Jones, would submit these documents to them. Mr. Griffin said, to my personal knowledge, I don't know that he had anything to do with it, as to Von Jess he's talking about, split from the previous question. Yes, sir. To my personal knowledge, I don't know that he had anything to do with it. To my personal belief, I think he planned it, orchestrated it, and carried it out. What about that as circumstantial evidence? Well, I think he said it right at the beginning. He has no personal knowledge, and even if his belief is so, he doesn't give us any information which takes us beyond the scintilla of evidence that is required for them. Beyond speculation. That's correct. Why isn't he an expert? Number one, they never declared. He's not a lay person in the normal sense. They didn't pull him off the street. No, your honor, they did not, but at the same time, they treated him as a back witness. They never notified us that he was, in fact, an expert witness. The time for naming expert witnesses has expired, had expired prior to doing the deposition of any of the generals and the colonels who testified on behalf of Colonel A. Well, why any lay person that's entitled to give an opinion under the other rule, whatever, 703 or something? I mean, you got to, somebody like this, he's not the normal person, as I said, that just pulled in off the street, doesn't know anything about it, and just, well, it doesn't sound right. He knows something about how the Army operates. He knows something about how the Army and the National Guard operate, I concede, your honor, but at the same- And there's a chain of command in these things, and everybody knows about that kind of stuff. His testimony was insufficient to put, or to tie Staff Sergeant McCarthy and Specialist Jones to either Colonel Von Jess or General Ingram. And in fact, as- But why is that so? Why is that so? Well, in connection with just the evidence presented by, or the deposition of Colonel Akins himself, where he indicated that he had never seen either, or he had never seen General Ingram order, he had never heard an order, he did not believe that General Ingram had anything to do with it. And then the testimony, or the concessions made at summary judgment by counsel for the plaintiff, both at summary judgment and here today, where they have no concrete evidence that Colonel Von Jess did it. Had you thought through these questions before you asked him about what this evidence stood for as far as a reasonable inference? I'm sorry, your honor? In planning for your argument, did you think about these passages I'm reading to you as to why they do or don't create a reasonable inference? The first one specifically, I did. This is the second. The second one, no, your honor, honestly, no. Well, how about the third one? This is Barnes. I believe if two enlisted soldiers are doing something to provide information to people beyond their rank, then they are either directed to do it, or gave a suggestion to do it. So if the general got them, if Von Jess got them, as far as I'm concerned, from a common sense approach, there's a fact somebody had to ask them to get the emails, or they would never have ended up where the alleged is supposed to have got. What about that? Yes, your honor, I did look at that. And your answer then is, to my question, why doesn't that create a reasonable inference to Von Jess? As it relates to Von Jess, your honor, again, while they're not naming names, that we have discovered that Colonel Von Jess turned that information over to his superiors as soon as he received it, all that we've got is not even a scintilla of evidence. We've got speculation on part of Colonel Jones that somebody must have said something, otherwise these two soldiers wouldn't have done it. And as Mr. Webb indicated in his conversation with the bench, there was no indication by either Staff Sergeant McCarthy in his deposition or in his affidavit, or Specialist Jones in his affidavit, that they had spoken with either Colonel Von Jess or General Ingram prior to the emails being sent to Colonel Von Jess. Spoken to them about the email. Spoken to them about the email. The relevant issue before them. And in fact, as Mr. Webb has reiterated to this court this morning, the reason, according to Staff Sergeant McCarthy, was because that was somebody they could trust. That's why they sent it to Von Jess. Why did they send it to anybody? Why were they even looking for somebody in the North Carolina National Guard they could trust to send them to? Staff Sergeant McCarthy, he testified in his deposition, Your Honor, that he communicated with somebody in the Staff Judge Advocate's office there in Kuwait. He said he got advice from JAG to do it, didn't he? That's correct, Your Honor. He said to JAG, he couldn't pinpoint exactly who it was. He said it was a male attorney. And that male- What do we do with the testimony that he told somebody in JAG who advised him to send it back to North Carolina? I think, basically, this is not Army, federal matter. You know, take it back to North Carolina, kind of. We have that testimony and explanation. What do we do? Is this other testimony enough to create a question of who ordered it? The common-sense approach and the, it's my personal belief, what about that? How do you balance that all? Well- Under the standard, how do you do it? What do we do with that under the standard? I don't believe that the statements by Colonel Barnes, that somebody must have given him that advice, is evidence that somebody is one or both of the defendants. However, Staff Sergeant McCarthy's testimony as to why he sent the information to Colonel, or to Colonel Von Jazz, simply indicates why and how it got there. But it's not dispositive of who, in fact, sent him the information. Because who sent him the information, or who- What are you talking about? What do you mean, who sent who the information? I'm sorry, Your Honor, I'm not being precise. I don't even, more than precise, I don't understand that concept. What do you mean, who sent who, why? Well, the argument is, in this case, as I understand it, that these two techs were somehow working in league with Von Jazz and Ingram, or else they had been instructed to do it. What about sent who to what? I don't even understand what you're saying. And I apologize for that. Okay, well, just answer the question then. The statement by Colonel Barnes, that he believed somebody must have told- I know, I've read them to you. I know what they are. Balance those statements with the testimony in the record as to the undisputed testimony on why they sent those documents. That's not disputed. What do we do looking at summary judgment on that evidence? Again, Your Honor, I believe that Colonel Barnes' testimony is insufficient to raise the evidence that the individual soldiers in Kuwait were told by either defendant that they, that Colonel- You don't think that creates a reasonable inference that they were involved? What about the other two pieces? Other two pieces? The other two that we spoke about? Yeah, Mr. Griffin, who says, I don't know from my personal knowledge, but my personal belief is, I think Von Jazz planned it, orchestrated it, and carried it out. What about that testimony? Again, Your Honor, he places no evidence before the court. All he says is, this is my personal belief. He doesn't give any facts as to why that is his personal belief. In fact, just prior to that, he said, I have no facts. What about Barnes says, under common sense, there's a fact somebody had to ask them to get the emails? And again, I believe that Staff Sergeant McCarthy testified as to how and why Colonel Von Jazz got that information, Your Honor. I know he did testify to that. Did that create a factual conflict, or what does that do? I don't believe that it raises a factual conflict. What about the fact that Judge King raised that these two gentlemen went back and got a job with Von Jazz? What about that? They did both get jobs with Colonel Von Jazz. I know they did. I'm asking you, why do we draw from that? Why can't you draw an inference from that, that somehow he was in league with them? Well, first, there continues to be no evidence outside of the fact that they got jobs with them. They were interviewed in a normal process. They received a job in their field of play. When I say field of play, I mean in their field, that is being information technology. There was no evidence that this job was some high-paying job beyond what they normally would have gotten. No, but I'm asking about drawing an inference from the fact of the hiring, not the process they went through to get hired. I'm asking, can we draw an inference from the fact that they were hired? The fact that they were hired alone, I do not believe raises this beyond some judgment by the trial court. I see my time is nearly up. Unless there are any other questions, I can respond. Thank you very much. Thank you, Your Honor. Thank you, Mr. Robbins. We appreciate it very much. Mr. Webb. I did such a poor job the first time of answering your question, Judge Shett. I have now found that I'm looking. You have to admit, I gave you two or three chances to do it. You did, and I appreciate that very much. And you have another chance. Thank you. At joint appendix page 284, Von Jess admitted himself to a Colonel Jones that Jones and McCarthy were, quote, his IT guys and they had set the computer up so they could get them, meaning the emails, all. And then Brigadier General Griffin says, at joint appendix page 285, I think that Von Jess had a burning in his soul to get Aikens. I think he hated him. I think he despised him over the fact that he wrote a bad OER on him. And then, of course, as you pointed out just moments ago, he testified that he thought Von Jess planned it, orchestrated it, carried it out. Von Jess was their mentor. They sent the emails to him because they found trustworthy, and they took a job with his company immediately. With regard to your questions about summary judgment, what inferences can be drawn, I would cite you to the Overstreet case from this court, 1991. The non-movement is entitled to have the credibility of his evidence as forecast, assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf. It has to be a reasonable inference. I agree, but this is a pretty broad standard, it seems to me, in summary judgment. Standard is, under summary judgment, as a non-moving party, you're entitled to all reasonable inferences. I am. That's what I was exploring with the other side to see whether or not there was a reasonable inference from those statements I read. A reasonable inference of involvement by Von Jess and by Ingram. And I think that you can draw a reasonable inferences with all that circumstantial evidence. Based on that, how can you do that? Tell me how you would do it from, well, the quotes that I just read, and the quotes that I read, more importantly, from this one, this is Griffin. To my personal knowledge, I don't know, we're talking about Von Jess, that he had anything to do with it. To my personal belief, I think he planned it, do we draw a reasonable inference from a person who has no knowledge, but just has the belief? Well, it's not like somebody just wandered into the National Guard Center in Raleigh, North Carolina. These are people that are there all the time, and they know these, and they know the parties. I think the cumulative effect of all these statements by Brigadier General Griffin, Colonel Barnes, Colonel General Hickman, all of them rise to the level of allowing this court to draw those reasonable inferences. I admit they're circumstantial, but there's a mountain of circumstantial evidence here. And when Mr. Barnes says, I'm concerned that from a common sense approach, there's the fact somebody had to ask them to get the emails. We draw a reasonable inference that that somebody was Von Jess or Ingram. Well, who else could it be? And why were they targeting Colonel Akins? Why did they send over 130 emails back? Well, I'm not asking, but why do? And should we just say, because somebody says he has a common sense approach, that creates a reasonable inference? Well, I don't think you'd consider that in isolation. As I said, I think you'd have to take the cumulative effect of all this, the mentoring, the trustworthiness, the vendetta, that clearly Von Jess had with Colonel Akins. As your honors know, summary judgment is an extraordinary remedy. It's not an extraordinary remedy. It's a remedy that you're entitled to if, in fact, you meet the standard. There's nothing extraordinary about it. It's just a standard that a moving party's entitled to if he meets the requirements under the law. It's just extraordinary. Right, if there's no genuine issue as to any material fact, giving every, as your honor said in the previous case, we're entitled to the benefit of circumstantial evidence. I do say that in a prior case. Yeah, you are. But there's nothing extraordinary about that. That's just an ordinary application of a rule. Right. And you may be entitled to it under these facts, but it's not extraordinary about a person being entitled to it or not entitled to it, in my opinion. Well, maybe because I've lived with this case for 10 years and been up here four times. You know, and I've allowed you to be. Yes, you have. Because I wanted to give you the opportunity. I thought the opinion was correct to give you an opportunity to put your evidence out there. Let's see what you have. I agree. And we think it should go before a jury. And a jury can say, we don't agree with you. We don't agree with you at all, Mr. Webb. But we think it needs to go there. Thank you very much for your time. Thank you very much, Mr. Webb. We'll come down in Greek Council and then go to the next case.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker